2010 UT App 38

**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert H. PEDERSEN, Defendant and Appellant.**

No. 20080643–CA.

Court of Appeals of Utah.

Feb. 19, 2010.

Jennifer K. Gowans, Park City, for Appellant.

Mark L. Shurtleff, atty. gen., and Christine F. Soltis, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and GREENWOOD.[1]

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment pursuant to Utah Code section 78A–3–103(2) (2008) and rule 11–201(6) of the Utah Rules of Judicial Administration.

## OPINION

GREENWOOD, Senior Judge:

¶ 1 Defendant Robert H. Pedersen appeals from his conviction of two counts of aggravated sexual abuse of his daughter T.P., arguing that his trial counsel and the trial court made various errors that individually and collectively resulted in an unfair trial. We affirm.

## BACKGROUND[2]

¶ 2 In 2007, Defendant was charged by information with two counts of aggravated sexual abuse of T.P., stemming from two separate incidents: In 2002, Defendant allegedly improperly touched T.P. in their Salt Lake City, Utah home (the Salt Lake touching); in 2004, Defendant again allegedly improperly touched T.P. in their Heber City, Utah home (the Heber touching). During questioning, Defendant apparently admitted to police that he had intentionally and inappropriately touched T.P.'s breasts. This "confession," as the State characterizes it, was suppressed prior to trial because the trial court determined that Defendant's statements resulted from coercive police questioning and misleading promises of leniency. Because there was no physical evidence, all of the evidence presented at Defendant's jury trial was testimonial. Most significantly, T.P. testified as to the two alleged touching incidents.

*The Salt Lake Touching*

¶ 3 In 2002, T.P. was "eleven or twelve years old and lived with Defendant, her custodial parent, in Salt Lake City." In December of that year there was a power outage that lasted for several nights. To stay warm on one of those nights, T.P. slept on a couch in the living room close to a heater. T.P. testified that she bundled up that evening, going to sleep wearing "a long-sleeved blue shirt[,] a camisole tank top and some pajama pants and [covered by] two blankets." T.P. further testified that at some point during the night, she awoke when she became aware

that Defendant was "moseying [her] to the floor." According to T.P., Defendant then laid down next to T.P. and "put his arm over [her] shirt onto [her] breast." Then, after a while, Defendant fully removed T.P.'s two shirts and "fondl[ed her] breasts for a long time." When asked to explain what she meant by "fondle," T.P. testified: "Like he would rub me, like, my whole chest and my stomach and he would like play with my breasts because I was starting to develop." T.P. continued, stating that after "about an hour," Defendant put both her shirts back on her and left her on the floor. T.P. testified that she was awake the entire time but had pretended to be asleep because she was confused. T.P. further stated that she had never spoken to Defendant about this incident because she was too afraid and didn't know what to do.

*The Heber Touching*

¶ 4 In late summer of 2004, Defendant touched T.P. again, this time in the family home in Heber. T.P. testified that she was in her younger brother's room watching television and playing video games on his bunk bed when this touching occurred. T.P. stated that she was on the bottom bunk with her brother when Defendant came into the room. At that point, T.P. testified that she climbed to the top bunk and lay down on her side so that she could continue watching SpongeBob SquarePants. She further testified that she felt uncomfortable because Defendant followed her to the top bunk and lay down on his side behind her, so that he too was watching television and his front was toward her back. T.P. testified that the only other person home at the time was her brother, who remained on the bottom bunk. At that point, Defendant put his hand around T.P. and placed his hand on her clothed breast. T.P. testified that Defendant's hand did not move around this time and was only on her breast for a minute at most "because [she] just jumped off the [top] bunk" and left the room. As with the Salt Lake touching, T.P. testified that this touching left her so uncomfortable

**2.** Because this appeal is taken from a conviction by jury, " 'we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal.' " *State v. Diaz*, 2002 UT App 288, ¶ 2, 55 P.3d 1131 (quoting *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346).

and confused that she never spoke to Defendant about it.

*Other Trial Testimony*

¶ 5 In addition to T.P., the following people testified at trial: Defendant; Lynn Robertson, a victim advocate who initially reported T.P.'s alleged abuse; and Tiffany Barnes, T.P.'s sister and Defendant's stepdaughter. Defendant testified as to his innocence, denying inappropriately touching T.P., while conceding that he would often lie next to his children, had put his arm around T.P. numerous times, and possibly, on one of those occasions, could have accidentally put his hand on her chest. Defendant also testified at length about the events occurring on and leading up to the night of February 2, 2007—when T.P. disclosed to the police that she had been touched inappropriately. Defendant testified that just days before he had changed the locks on the house because T.P. had disregarded her curfew several times. On February 2, Defendant called the police because he heard someone trying to get into the house. Aware that T.P. was out past curfew without the new house key, Defendant assumed that it was T.P. but called the police nevertheless, stating that "[I was] to the point of [T.P.'s] not going to listen to me, maybe [she] will listen to the police." Defendant testified that T.P. first complained to the responding officers that Defendant was not feeding her. According to Defendant, after the responding officers had determined that there was ample food in the house, T.P. "teared up and said [Defendant] is molesting me." Defendant repeatedly testified that it was possible he had inappropriately touched T.P. during "horseplay" or "wrestling," but also repeatedly denied ever inappropriately touching T.P. intentionally or with an intent to sexually arouse or gratify.

¶ 6 Lynn Robertson, a victim advocate for Wasatch County, testified as to why she felt compelled to report that she suspected T.P. was being sexually abused. She testified that a "good friend" of hers called her for advice as to how to report his suspicions of abuse, after the friend's son had become concerned that T.P. was being sexually abused. Because Robertson said she could

"never [be] sure if the [friend was] going to follow up and really report" the allegations, she phoned Heber City Police to report the alleged abuse herself.

¶ 7 Finally, Tiffany Barnes, Defendant's stepdaughter, testified that Defendant had sexually abused her while she lived in his house. The admissibility of Tiffany's testimony was highly contested and was decided prior to trial. After holding an evidentiary hearing and considering briefing from the parties, the trial court concluded that Tiffany's testimony was admissible because it was relevant to the present case, it was offered for a permissible noncharacter purpose, and its probative value was not substantially outweighed by the danger of unfair prejudice. Tiffany testified at length about Defendant's alleged abuse of her, which included acts occurring approximately seven to ten years prior to the alleged events in the present case. Tiffany also testified in detail about the incidents leading to her allegations of abuse, as well as the reasons she later recanted.

¶ 8 The jury convicted Defendant as charged and the trial court sentenced him to, among other things, two concurrent terms of five years to life imprisonment. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Defendant first argues that his trial counsel was ineffective in several respects. "'An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law.'" *State v. Perry*, 2009 UT App 51, ¶ 9, 204 P.3d 880 (quoting *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162).

¶ 10 Next, Defendant argues that the trial court incorrectly allowed evidence of Defendant's prior bad acts to be admitted, contrary to the mandates of rule 404(b) of the Utah Rules of Evidence. *See* Utah R. Evid. 404(b). "[W]e review a trial court's decision to admit evidence under rule 404(b) ... under an abuse of discretion standard." *State v. Nelson–Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120. And although "[w]e review the record to determine whether the admission of other bad acts evidence was scrupulously

examined by the trial judge in the proper exercise of that discretion," *id.* (internal quotation marks omitted), we no longer constrain our review by granting the trial court's decision "limited deference," *id.* ¶ 16 n. 5 (citing *State v. Decorso,* 1999 UT 57, ¶¶ 14–18, 993 P.2d 837).

██ ¶ 11 Defendant also contends that a mistrial was warranted due to prosecutorial misconduct. Claims of prosecutorial misconduct are subject to the preservation rule. *See State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. Because Defendant did not preserve this issue before the trial court and raises it for the first time on appeal, we can review his claim only for plain error or exceptional circumstances. *See id.* Defendant does not argue that exceptional circumstances exist but does assert that the trial court plainly erred in failing to sua sponte declare a mistrial based on the alleged misconduct. Accordingly, we will reverse only if Defendant can "establish that '(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.'" *Id.* ¶ 13 (alteration in original) (quoting *State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993)).

██ ¶ 12 Finally, Defendant appeals the trial court's denial of his motion for a directed verdict as to Count I (the Heber touching), arguing that the admissible evidence was insufficient to sustain the jury's conviction as to that count.

> In criminal cases, our review of a district court's ruling on a motion for a directed verdict and of the sufficiency of the evidence to support a jury verdict involves basically the same analysis. As to both issues, we review the evidence and all inferences that may reasonably be drawn from it to ensure that there was some basis upon which a reasonable jury could reach a verdict of guilt beyond a reasonable doubt.

*State v. Patrick,* 2009 UT App 226, ¶ 10, 217 P.3d 1150 (citation and internal quotation marks omitted).

## ANALYSIS

### I.   Ineffective Assistance of Counsel

██ ¶ 13 Our analysis of a claim of ineffective assistance of counsel involves two distinct determinations: "(1) whether counsel's performance was deficient in that it 'fell below an objective standard of reasonableness'; and (2) whether counsel's performance was prejudicial in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Menzies v. Galetka,* 2006 UT 81, ¶ 87, 150 P.3d 480 (quoting *Strickland v. Washington,* 466 U.S. 668, 688–89, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Failure to establish either prong is fatal to Defendant's ineffective assistance claim. *See State v. Diaz,* 2002 UT App 288, ¶ 38, 55 P.3d 1131. In order to determine whether Defendant has met his substantial burden, we "must 'eliminate the distorting effects of hindsight ... and ... evaluate the conduct [complained of] from counsel's perspective at the time [it occurred].'" *Menzies,* 2006 UT 81, ¶ 89, 150 P.3d 480 (omissions in original) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). Thus, so long as "a rational basis for counsel's performance can be articulated" we will assume that counsel performed competently. *State v. Bryant,* 965 P.2d 539, 542–43 (Utah Ct.App.1998) (quoting *State v. Tennyson,* 850 P.2d 461, 468 (Utah Ct.App.1993)). Stated differently, "before we will reverse a conviction based on ineffective assistance of counsel, we must be persuaded that there was a lack of any conceivable tactical basis for counsel's actions." *Id.* at 542 (internal quotation marks omitted). We also note that "[n]either speculative claims nor counsel's failure to make futile objections establishes ineffective assistance of counsel." *State v. Chacon,* 962 P.2d 48, 51 (Utah 1998).

¶ 14 Defendant claims his counsel was ineffective in several respects, arguing that he was prejudiced by his counsel's failure to (1) move to dismiss Count II for improper venue; (2) move for a mistrial based on Tiffany's testimony, the prosecutor's alleged misconduct, and defense counsel's rejection of the

trial court's invitation for a curative instruction following the State's referral to Defendant's suppressed confession; (3) move ·to exclude references to T.P. as the "victim" at trial; and (4) object to triple hearsay.

### A. Motion to Dismiss for Improper Venue

■ ¶ 15 This case was prosecuted in the Fourth District because the events involved in Count I occurred in Heber City, Utah, within the boundaries of the Fourth District. However, the events related to Count II (the Salt Lake touching) occurred in Salt Lake County, Utah, and thus, Count II should properly have been prosecuted in the Third District. *See* Utah Code Ann. § 76–1–202(1) (2008) ("Criminal actions shall be tried in the county, district, or precinct where the offense is alleged to have been committed."). We therefore agree with Defendant that venue was proper for Count I but improper for Count II. Defendant argues that because venue was improper for Count II his counsel was necessarily ineffective for failing to move for its dismissal on that basis. Conceding that venue as to Count II was improper, the State contends that Defendant did not receive ineffective assistance of counsel because "[d]efense counsel reasonably chose not to object to venue and, in any case, no prejudice resulted."

■ ¶ 16 We conclude that Defendant's counsel was not ineffective in this respect because the failure to move to dismiss Count II on the basis of improper venue was reasonable trial strategy for three reasons. First, and most notably, Defendant's confession had been suppressed in the Fourth District and was law of the case in that district, preventing the State from using it to prosecute either count. Thus, it was reasonable for defense counsel to choose not to challenge venue for Count II and risk the possibility of a different ruling in the Third District, which could potentially have allowed use of the confession as to Count II. Second, had Count II been dismissed, it likely would have been refiled in the correct district, and Defendant would have been exposed to the increased anxiety and cost resulting from two trials rather than one. Defendant's defense to both counts, even had they been tried sepa-rately, likely would have remained the same and would have required Defendant to testify in both cases. It is reasonable that defense counsel did not object to venue because of a strategic decision to minimize Defendant's exposure to cross-examination and impeachment, exposure that would have necessarily resulted from being prosecuted by separate prosecutors in separate trials held in separate districts. Finally, the evidence related to each count likely would have been admissible in the prosecution of the other in order to allow the jury to be presented with T.P.'s complete story. *See State v. Killpack,* 2008 UT 49, ¶ 46, 191 P.3d 17 ("Our child abuse case law clearly indicates that evidence of instances of uncharged abuse involving the same victim and the same defendant is admissible for proper noncharacter pur-poses.... Such evidence is often indicative of the defendant's state of mind and completes the story of the charged abuse." (internal quotation marks omitted)). That probability would also have affected counsel's strategic decision-making.· Accordingly, we hold that Defendant's counsel· was not ineffective in this respect. *See Diaz,* 2002 UT App 288, ¶ 38, 55 P.3d 1131.

### B. Motion for a Mistrial

■ ¶ 17 Defendant also argues that his counsel's failure to move for a mistrial based on the prosecutor's alleged misconduct constitutes ineffective assistance. Defendant asserts that· the prosecutor's attempt to question Defendant about his confession to Heber City Police, which confession had earlier been suppressed because the court determined it was procured by coercion, warranted a mistrial. A "trial court should not grant a mistrial except where the circumstances are such as to reasonably indicate ... that a fair trial cannot be had and that a mistrial·is necessary in order to avoid injustice." *State v. Wach,* 2001 UT 35, ¶ 45, 24 P.3d 948 (omission in original) (internal quotation marks omitted).

¶ 18 In cross-examining Defendant, the prosecutor asked, "Do you recall an officer asking you the question, [']If I had to hook you up to a lie detector test and said have you ever touched your other daughter, refer-

ring to [T.P.], in an inappropriate way, what would your response be[']?" Defense counsel then "object[ed] to this question based on ... a motion to suppress that was granted by the Court prior to this." Before calling a recess and excusing the jury, the trial court admonished the jury that they were "not to form or express any opinion about the case [or to] discuss the case amongst [them]selves or with anyone else."

¶ 19 During the recess, Defendant's counsel argued that the question asked and any answers related to the confession were precluded by the trial court's suppression order. The prosecutor argued that the question was appropriate and the confession now admissible because, by testifying and denying criminal responsibility, Defendant had opened the door for the prosecution to use the confession to attack his credibility. After reviewing the applicable case law and carefully considering the parties' arguments, the trial court concluded that the confession could not be referred to during cross-examination and sustained defense counsel's objection. Before reconvening, the trial court asked if defense counsel was "requesting any kind of curative instruction in light of the partial question that was asked?" Aware that it had been approximately one hour since the objection was raised and apparently satisfied with the ability of the trial court's ruling to cure any harm, defense counsel declined the court's invitation for a curative instruction. Given the limited degree to which Defendant was questioned regarding the confession, the hour-long break between the questioning and trial resuming, and the trial court's ruling excluding any further references to the confession, we determine that a motion for a mistrial based on this line of questioning likely would have been futile.[3] *See id.* Defense counsel was therefore not ineffective in failing to move for a mistrial. *See State v. Chacon,* 962 P.2d 48, 51 (Utah 1998).

---

3. Furthermore, we note that due to defense counsel's timely objection at trial, it is unlikely that it adversely affected the outcome of Defendant's trial. *See generally Menzies v. Galetka,* 2006 UT 81, ¶ 87, 150 P.3d 480 (requiring a showing of prejudice in addition to proof that counsel performed deficiently); *Diaz,* 2002 UT

¶ 20 Similarly, Defendant contends his counsel was ineffective for rejecting the court's invitation to submit a curative instruction to the jury after sustaining defense counsel's objection to the State's questioning alluding to Defendant's confession. We believe that it was reasonable, sound trial strategy to reject the trial court's offer to give a curative instruction. The offered instruction would have been made approximately one hour after the allegedly improper line of questioning and the instruction itself might just as well have reminded the jury of the line of questioning that they had probably forgotten. In addition, the questioning was sufficiently limited that it did not really alert the jury to a possible confession by Defendant. Because this was sound trial strategy, we conclude that Defendant's counsel was not ineffective for rejecting the court's invitation for a curative instruction. *See State v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App. 1998).

¶ 21 In addition, Defendant argues that his counsel was ineffective for failing to move for a mistrial based on Tiffany's testimony. Specifically, Defendant repeatedly asserts that Tiffany's testimony improperly bolstered T.P.'s credibility. However, as the State noted at oral argument and our review of the record confirms, Tiffany never testified as to T.P.'s credibility: Tiffany's testimony was limited to her recollection of separate incidents of abuse allegedly committed by Defendant. Although Defendant is correct in stating that Tiffany's testimony bolstered the State's case against Defendant, we do not agree that her testimony improperly bolstered T.P.'s credibility or that a mistrial motion was warranted. *See Wach,* 2001 UT 35, ¶ 45, 24 P.3d 948.

## C. References to T.P. as "The Victim"

¶ 22 Defendant also argues that his counsel was ineffective by failing to file a motion in limine or to object to references to

App 288, ¶ 38, 55 P.3d 1131 (noting that failure on either prong defeats an ineffective assistance claim). The jury was not informed about the existence of Defendant's confession, and we are not convinced that the single question, when considered in context, would have alerted a reasonable juror to its existence.

T.P. as "the victim." Even assuming that the failure to file a motion in limine or object was error, Defendant's ineffective assistance claim fails because he has not shown any resulting prejudice. *See Menzies v. Galetka*, 2006 UT 81, ¶ 87, 150 P.3d 480 (requiring a showing of prejudice in addition to proof of deficient performance for a successful ineffective assistance claim); *State v. Diaz*, 2002 UT App 288, ¶ 38, 55 P.3d 1131 (stating that failure on either prong is fatal).

¶ 23 The term "victim" was used a total of eleven times during the trial.[4] Of these eleven references, seven were in connection with the testimony of Lynn Robertson, the victim advocate who initially reported Defendant's suspected abuse of T.P. In addition, the State and defense counsel each referred to T.P. as the victim twice, although each qualified one of its references with "alleged." Thus, there were only two direct references to T.P. as the victim. First, after Robertson finished testifying, the State, noting that Robertson was a victim advocate, asked the court "may she remain with the victim?" Second, in its opening statement defense counsel stated, in pertinent part, as follows:

> The victim-and the idea he's charged with aggravated sexual abuse conjures up all kinds of pictures in your mind. I mean, that's the horrible situation. We don't have that kind of thing in this case. If anything, it's more of inappropriate touching. We don't think a crime was committed period. We think the evidence is going to show that there was no crime.

We are not persuaded that the outcome of the case would have been more favorable to Defendant absent these two isolated and qualified references to T.P. as "the victim." *See Menzies*, 2006 UT 81, ¶ 87, 150 P.3d 480.

### D.  Triple Hearsay

¶ 24 Finally, Defendant argues that "Lynn Robertson, the victim advocate, was allowed to proffer T.P.'s out-of-court statements that she was sexually abused by [Defendant]. Moreover, Ms. Robertson claimed she heard the allegations third-hand from the father of one of T.P.'s friends who T.P. had allegedly disclosed to." Defendant then argues that because "the content of the alleged statements went to the ultimate issue," the statements were hearsay. However, these statements do not qualify as hearsay because they were not proffered for the truth of the matter asserted. *See* Utah R. Evid. 801(c) (defining "hearsay" as "a statement ... offered in evidence to prove the truth of the matter asserted"). These statements consist of Robertson's description of a phone call she received from a friend that caused her to contact the Heber City Police. Robertson's testimony was not offered to show that Defendant abused T.P. or even that Robertson's friend (or the friend's son) believed that Defendant abused T.P. These statements were offered instead to explain why Robertson reported her suspicions of possible abuse to the authorities. Because objecting to these statements on hearsay grounds would have been futile, Defendant's counsel was not ineffective in failing to do so. *See State v. Chacon*, 962 P.2d 48, 51 (Utah 1998).

### II.  Rule 404(b) Evidence

¶ 25 Defendant contends that the trial court abused its discretion by allowing Tiffany "to testify that [Defendant] had committed acts of sexual abuse against her about seven to [ten] years earlier than the allegations in this case."[5] Tiffany, who is eight years older than T.P., testified that she lived with Defendant (her stepfather at the time), T.P., and their mother until she was thirteen.

---

4. There were two additional references to T.P. as the "victim" on the day of the trial, but they were made before the jury was convened.

5. Defendant also argues that while testifying, Tiffany "impermissibly revealed that Defendant assaulted her mother several times and 'kicked' [her] mother 'through walls.'" Defense counsel timely and successfully objected to these statements, curtailing Tiffany's testimony about Defendant's violence toward her mother. Regard-

less, Defendant argues that the trial court erred by failing to sua sponte declare a mistrial in response. We do not address this issue, however, because Defendant's argument is inadequately briefed, contained in only two paragraphs with no citation to the record or supporting legal authority and no attempt to analyze the complex rules governing the admissibility of evidence. *See generally Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998).

According to Tiffany, Defendant first sexually abused her when she was twelve or thirteen years old. She testified that one morning, as Defendant attempted to wake her up, he kissed her on the mouth and rubbed his tongue on her lips. Tiffany pretended she was asleep because she "didn't know really how to handle the situation." Tiffany testified that Defendant kissed her on other occasions and frequently watched her when she was showering. Defendant once rubbed Tiffany's clothed breasts and told her to take off her clothes and lie down on the bed. Tiffany testified that she took off her clothes except for her underwear, and that Defendant then rubbed her bare breasts and "hump[ed] her leg." Tiffany was aware that Defendant had an erection and saw him get up to get a condom. When Tiffany began to cry and shake, Defendant stopped. After stopping, Defendant threatened that he would harm Tiffany or her mother if Tiffany told anyone what had happened.

¶ 26 Tiffany testified that when she was twelve or thirteen she told her mother about Defendant's actions. At her mother's request, Tiffany went to a neighbor's house while her mother confronted Defendant about Tiffany's allegations. Either Tiffany's mother or the neighbor called the Division of Child and Family Services. The investigation of Defendant was later dropped after Tiffany's mother and Defendant persuaded Tiffany to recant her accusations. Tiffany said that her mother then kicked her out of the home.

¶ 27 Rule 404(b) of the Utah Rules of Evidence prohibits admission of "[e]vidence of other crimes, wrongs or acts" when introduced "to prove the character of a person in order to show action in conformity therewith." Utah R. Evid. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

¶ 28 In *State v. Balfour*, 2008 UT App 410, 198 P.3d 471, this court addressed the admissibility of prior bad acts evidence and reiterated that "[t]he Utah Supreme Court has established a three-part test for assessing whether evidence of other crimes, wrongs, or acts is admissible under rule 404(b)." *Id.* ¶ 22. "First, the evidence must be presented for a proper, noncharacter purpose. Second, the evidence must be relevant to the offense being prosecuted. Finally, the evidence of other crimes, wrongs, or acts must be admissible under rule 403[of the Utah Rules of Evidence]." *Id.* (citations omitted).

¶ 29 After holding an evidentiary hearing at which both Tiffany and Defendant testified, the trial court found that Tiffany's testimony regarding Defendant's alleged prior bad acts was being "offered for a non-character purpose, specifically, to demonstrate the Defendant's intent to arouse or gratify sexual desire and also the absence of mistake or accident," and that such testimony is "relevant in that it would make [D]efendant's intent [and] . . . the absence of mistake more likely." The trial court further found that the testimony "has probative value and that that value is not substantially outweighed by danger of unfair prejudice." The trial court determined that the events surrounding Tiffany's and T.P.'s allegations "are similar" and that "the need for [Tiffany's testimony] is significant" and "is significant proof of th[e] required elements [of intent or absence of mistake]."

¶ 30 On appeal, Defendant's arguments address all three prongs of the prior bad acts test set forth in *Balfour*. Specifically, Defendant argues that Tiffany's testimony (1) was offered for the improper purpose of portraying Defendant as a child molester, (2) was not relevant to T.P.'s allegations, and (3) was substantially more prejudicial than probative. We address each prong separately.

### A. Proper Noncharacter Purpose

¶ 31 Defendant asserts that the prosecutor's own closing argument provides the clearest evidence that Tiffany's testimony was admitted for an improper character purpose, quoting as follows: "Put together [T.P.'s] account with Tiffany's account. This demonstrates an ongoing pattern of conduct on behalf of [D]efendant against young children, young female children, his stepdaughter and his daughter. This pattern of conduct is consistent with the intent to arouse or gratify sexual desire and inconsistent with

mistake or accident." Defendant thus argues that "the State presented [Tiffany's] testimony as evidence of [Defendant]'s character as a child molester to prove an action in conformity therewith—that he abused T.P. in this case."

¶ 32 Although the prosecutor references a "pattern of conduct," we find Defendant's argument unavailing because the prosecutor makes clear that this evidence was directed toward and reflective of Defendant's intent and the absence of mistake, each of which is an allowable purpose for admission of prior bad acts evidence under rule 404(b). *See* Utah R. Evid. 404(b). In order to convict Defendant, the State had to prove that Defendant touched T.P.'s breasts "with the intent to arouse or gratify the sexual desire of any person," *see* Utah Code Ann. § 76–5–404.1(2) (2008), and that the touching was not as a result of mistake or accident, *see id.* § 76–5–407(3).[6] Tiffany's testimony was thus indicative of both intent and lack of mistake. We therefore conclude that the trial court did not abuse its discretion in determining that Tiffany's testimony was offered for a proper, noncharacter purpose.

### B. Tiffany's Testimony Is Relevant

¶ 33 Defendant briefly contends that Tiffany's testimony should have been excluded as irrelevant because "[t]here is no connection or nexus between T.P.'s allegations in this case and Tiffany['s] ... allegations." Defendant argues that Tiffany's alleged abuse occurred seven to ten years prior to the alleged abuse in the present case, Tiffany's abuse necessarily involved a different complaining witness, and the allegations "are not related" to one another. However, as the State points out, the allegations are more similar than Defendant would have us believe. Namely, the State notes the following similarities: (1) both Tiffany and T.P. were approximately eleven or twelve years old when the alleged abuse began; (2) both Tiffany's and T.P.'s alleged abuses occurred in the family home and at the hands of Defendant, their father; (3) both girls were asleep when

Defendant first allegedly touched them inappropriately; (4) each alleged abuse involved Defendant touching and/or fondling the girls' clothed and naked breasts; and (5) each girl was naked from the waist up at some point during the alleged abuses.

¶ 34 The trial court determined that Tiffany's testimony was relevant to rebut Defendant's assertions that he did not intend to touch T.P., and if he did touch her, he did so mistakenly. We agree with the trial court that Tiffany's testimony makes more likely both Defendant's "intent to arouse or gratify ... sexual desire" by touching T.P., *see id.* § 76–5–404.1(2); Utah R. Evid. 404(b), as well as the absence of mistake on his part in touching T.P., *see* Utah R. Evid. 404(b). Consequently, we conclude that Tiffany's testimony was relevant to the allegations in the present case. *See id.* R. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable ... than it would be without the evidence").

### C. Probative Value Not Substantially Outweighed by Danger of Unfair Prejudice

¶ 35 Defendant further asserts that Tiffany's testimony was substantially more prejudicial than probative because it improperly bolstered T.P.'s credibility.[7] In addition, Defendant argues that Tiffany's testimony should have been excluded because there was no direct physical evidence of, nor was there a third-party eyewitness to, T.P.'s alleged abuse, and T.P.'s accusations followed confrontations between T.P. and Defendant about T.P.'s behavior. Put another way, Defendant essentially argues that if there is not a witness or physical evidence in cases such as this then the evidentiary battle is only fair if left to "he said versus she said."

¶ 36 Contrary to Defendant's argument, however, the standard is not whether the evidence bolstered other evidence. Evidence is to be excluded under rule 403 of the Utah

---

6. Defendant denies ever inappropriately touching T.P. intentionally or with an intent to sexually arouse or gratify.

7. *See supra* ¶ 21 (addressing Defendant's improper bolstering claim in the context of ineffective assistance of counsel).

Rules of Evidence only if it is unfairly prejudicial, *see id.* R. 403, meaning it has "an undue tendency to suggest decision on an improper basis, commonly but not necessarily an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror." *Woods v. Zeluff,* 2007 UT App 84, ¶ 7, 158 P.3d 552 (internal quotation marks omitted). Some of the factors to consider when deciding whether evidence is substantially more prejudicial than probative include

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*State v. Shickles,* 760 P.2d 291, 295–96 (Utah 1988) (internal quotation marks omitted).

¶ 37 Defendant does not argue that the trial court failed to weigh the necessary factors but argues instead that the trial court erred in several of its conclusions. More specifically, Defendant contends that Tiffany's testimony had "no nexus to the current charges" and further asserts that, even if there was a nexus, the time elapsed between Tiffany's and T.P.'s allegations is too great.

¶ 38 The trial court, however, to its credit, carefully and thoroughly assessed the necessary factors after Tiffany's pretrial testimony. The trial court then entered findings of fact and conclusions of law, including, in part, the following conclusions of law:

> 6. As to the strength of the evidence, [Tiffany] is an articulate adult who has a clear recollection of events that caused her significant worry in her life. She has testified with confidence today. I have considered her demeanor in making that determination.
>
> 7. Ultimately the concern is that the conduct [Tiffany] attributes to [D]efendant never gave rise to criminal charges and also that [she] recanted at the age of 12 [or 13]. Conviction of a bad act is not the standard of admissibility under Rule 404(b). Th[at] Rule applies to bad acts, not to convictions.
>
> 8. As to the recanting when [Tiffany] was age 12 [or 13], I am not persuaded that that so undermines the strength of the evidence that admissibility is not appropriate. She has described with particularity the reasons that she did that, that [D]efendant had in effect tampered with her testimony, that she was promised gifts, but more importantly manipulated by the affection of her mother, all of which things can be extremely meaningful to an impressionable adolescent.
>
> 9. The events [surrounding Tiffany's and T.P.'s allegations] are similar. The alleged victim in this case was age 11 or 12 as was [Tiffany] at the time of the events, both resided in the family home when [D]efendant perpetrated these acts. These acts began in part when the alleged victim was asleep in both instances. There is a significant interval of time involved. Ultimately [Tiffany] reported in either 1994 or [19]95, whereas this case deals with events occurring in the years 2002 and 2004, so the length of time is between 7 and 8 years, or 9 to 10 years at the outside. Given the similarities between the offenses that the alleged offenses occurred against victims of a particular age; in my view the interval of time is a less weighty factor.
>
> 10. The need for the evidence is significant. The court has suppressed statements of [D]efendant to the police, and therefore the [S]tate's case in this matter consists solely of the testimony of the alleged victim.
>
> 11. In terms of the efficacy of alternative proof to prove intent and the absence of mistake, the intent is proved by what a person says and what a person does. This bad act evidence is significant proof of those required elements.
>
> 12. Lastly, I am not persuaded that this evidence will arouse the jury to overmastering hostility. The events that [Tiffany] has described are of a similar nature to those charged here. It is true that the act alleged to have been committed against [Tiffany] escalated to a degree that does not exist in this case, but it is not so markedly different as to arouse the jury to overmastering hostility.

Because the trial court "scrupulously examined" the admission of Tiffany's testimony by analyzing and weighing each of the applicable factors, we conclude that the trial court did not abuse its discretion in determining that the evidence was more probative than prejudicial and thus allowing Tiffany to testify. *See State v. Nelson–Waggoner,* 2000 UT 59, ¶ 16, 6 P.3d 1120.

### III. Plain Error Based on Alleged Prosecutorial Misconduct

¶ 39 Defendant urges us to reverse based on either prosecutorial misconduct or, under a plain error analysis, the trial court's failure to sua sponte declare a mistrial because of the prosecutor's allegedly improper comments. Because Defendant has not preserved his prosecutorial misconduct claim, however, our review is limited to a determination of whether the court's failure to sua sponte declare a mistrial was plainly erroneous. *See State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. We will reverse for plain error only if Defendant is able to show that there was an obvious error that was harmful to his defense. *See id.* ¶ 13. And, "[f]or purposes of determining whether a mistrial should have been granted, our overriding concern is that [D]efendant received a fair trial." *State v. Harmon,* 956 P.2d 262, 276 (Utah 1998). Defendant's claim fails because we determine that there was no error, and even if error occurred, it was neither obvious nor harmful to Defendant.

¶ 40 In cross-examining Defendant, the prosecutor asked the following question: "Do you recall an officer asking you the question, 'If I had to hook you up to a lie detector test and said have you ever touched . . . [T.P.] in an inappropriate way, what would your response be.'" To this, defense counsel immediately objected on the basis that Defendant's alleged confession had been suppressed. Thus, the trial court was faced with a timely objection to the beginnings of a potentially problematic line of questioning. A recess was quickly called, at which point the trial court heard the parties' arguments and reviewed relevant case law for nearly an hour before ruling on the objection. The objection required the court to consider whether Defendant's confession was pro-

cured through a violation of only the "prophylactic Miranda rules" or through violation of Defendant's fifth amendment rights and whether Defendant had "opened the door" during his direct testimony thus allowing the prosecutor to use the confession to attack Defendant's credibility. After the objection was sustained, defense counsel rejected the court's invitation for a curative instruction, stating as follows: "I kind of perked up when I heard polygraph, but I think your ruling has covered that and I don't view a problem with that as far as the jury is concerned."

¶ 41 We conclude that it was not obvious that Defendant's trial was unfair because of this one question. Our decision is supported by the jury's minimal exposure to this potentially problematic line of questioning, the immediate recess and conference between the trial court and counsel to address the objection, and the length of time between the allegedly inappropriate questioning and the reconvening of the jury. In addition, Defendant's counsel did not move for a mistrial and declined a curative instruction when prompted by the court. Thus, if there was any error it may well be invited and, accordingly, provides no grounds for reversal. *See Pratt v. Nelson,* 2007 UT 41, ¶ 17, 164 P.3d 366 (holding that appellate review is precluded when the error is invited). Defendant's claim of plain error therefore fails.

### IV. Denial of Motion for a Directed Verdict

¶ 42 Finally, Defendant contends that the trial court erred in denying his motion for a directed verdict as to Count I (the Heber touching). Defendant's argument relies for the most part on his previously considered contentions that Tiffany's testimony and any events surrounding Count II (the Salt Lake touching) should have been excluded from the trial. Thus, his "position [is] that the *admissible* evidence in this case, when construed in a light most favorable to the jury's verdict, is insufficient to support a guilty verdict as to Count I." However, Defendant did not preserve this argument below. As the State notes, Defendant moved for a directed verdict on a different basis

than that asserted on appeal; namely, at trial Defendant argued that he was entitled to a directed verdict because, according to Defendant's characterization, T.P. said she did not believe the events surrounding the Heber touching constituted molestation. Accordingly, Defendant argued that the State failed to prove its requisite prima facie case. Because the argument before us now was not "specifically raised such that the issue [wa]s sufficiently raised to a level of consciousness before the trial court," we decline to review it on appeal. *State v. Richins*, 2004 UT App 36, ¶ 8, 86 P.3d 759. We also note that Defendant does not argue plain error or exceptional circumstances to justify our review of this unpreserved argument. *See id.* (reiterating that unpreserved arguments will only be reviewed for plain error or exceptional circumstances).

## CONCLUSION

¶ 43 We determine that Defendant has failed to show that his trial counsel rendered ineffective assistance in any of the asserted ways. We also conclude that the trial court did not abuse its discretion in allowing admission of Tiffany's testimony under rule 404(b) of the Utah Rules of Evidence because it was offered for a proper noncharacter purpose, it was relevant to T.P.'s allegations of abuse, and its probative value was not substantially outweighed by the danger of unfair prejudice. In addition, Defendant has not demonstrated that the trial court plainly erred in failing to sua sponte declare a mistrial on the basis of the prosecutor's single question obliquely referring to Defendant's suppressed confession. Finally, we decline to review Defendant's claim that the trial court erred in denying his motion for a directed verdict as to Count I because Defendant did not preserve that argument below and did not argue plain error or exceptional circumstances on appeal. Accordingly, we affirm.

¶ 44 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and WILLIAM A. THORNE JR., Judge.