AMENDED OPINION*

*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2017 UT 55**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner,*

*v.*

JOHN MARCUS LOWTHER,
*Respondent.*

No. 20150803
Filed June 19, 2017

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Randall N. Skanchy
No. 111900725

Attorneys:

Sean D. Reyes, Att'y Gen., Tera J. Peterson, Asst. Solic. Gen.,
Salt Lake City, for petitioner

Edward J. Stone, Salt Lake City, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE HIMONAS, and
JUDGE CONNORS joined.

Having recused himself, JUSTICE PEARCE did not participate herein;
SECOND DISTRICT COURT JUDGE DAVID M. CONNORS sat.

* The court has rewritten paragraph 30 and footnotes 39 and 40.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶ 1   This case requires us to determine whether the doctrine of chances' four foundational requirements, outlined in *State v. Verde*,[1] apply to both rule 403 and rule 404(b) of the Utah Rules of Evidence. The court of appeals concluded that *Verde*'s foundational requirements displaced the factors set forth in *State v. Shickles*[2] for purposes of a rule 403 balancing test.[3] As discussed below, the court of appeals erred. In applying rule 403, a court is not required to consider any set of factors or elements, but is bound by the language of the rule. In this case, the district court did not abuse its discretion by failing to consider the *Verde* requirements. It did, however, abuse its discretion by mechanically applying the *Shickles* factors to assess the probative value of the State's rule 404(b) evidence. We therefore affirm the court of appeals' ultimate conclusion that the district court's evidentiary ruling was erroneous, but under different reasoning. As defendant John Marcus Lowther has ultimately prevailed on appeal, he is entitled to withdraw his guilty plea.

## Background

¶ 2   This case deals with the alleged rape or object rape of four women: A.P., C.H., C.R., and K.S. Each woman has identified Mr. Lowther as her attacker, and the State has filed charges against him for each alleged crime. After the district court severed the cases, the State elected to try Mr. Lowther first on the charge of raping K.S. And in prosecuting that case, the State moved to introduce the testimony of the other women under rule 404(b) of the Utah Rules of Evidence and the doctrine of chances in order to show that K.S. did not consent to sexual intercourse with Mr. Lowther. After an evidentiary hearing, the district court granted the State's motion. Mr. Lowther entered a conditional guilty plea to the rapes of K.S. and C.H., in exchange for the State's agreement to dismiss the charges regarding A.P. and C.R. His plea reserved the right to challenge the district court's decision to admit the testimony of A.P., C.H., and C.R. Mr. Lowther filed a timely appeal, and the court of appeals concluded that the district court erred in its application of the doctrine of chances and in its decision to admit the testimony of A.P.

---

[1] 2012 UT 60, 296 P.3d 673.

[2] 760 P.2d 291 (Utah 1988).

[3] *State v. Lowther*, 2015 UT App 180, ¶ 22, 356 P.3d 173.

We granted certiorari to determine whether the court of appeals properly applied the doctrine of chances. As answering this question depends on knowledge of the underlying case, we first describe the factual background and then describe the procedural history of this case. We begin with testimony regarding the alleged rape at issue, K.S.'s, and then describe the testimony of the other three witnesses the State sought to introduce under the doctrine of chances.[4]

*The Alleged Rape of K.S.*

¶ 3   On September 23, 2010, 20-year-old K.S. and her friend, S.H., attended a movie premier. Before going to the movie, K.S. consumed "two or three shots worth" of vodka. During the movie, she also drank "a couple sips" of alcohol from a friend's flask. After the movie, K.S. and S.H. went to the Red Lion Hotel, and while there, K.S. started, but did not finish, a beer. After about an hour, K.S. and S.H. were tired. K.S. decided to stay the night at S.H.'s home, which she had done on previous occasions. Neither woman felt comfortable driving, so K.S. called her friend Aaron to pick them up and drive them to S.H.'s house.

¶ 4   Aaron and two other men arrived at about 1:30 or 2:00 a.m. in a car driven by Mr. Lowther. K.S. had met Mr. Lowther on a previous occasion through a mutual friend. On the drive home, Mr. Lowther insisted on taking the male passengers home first. He then drove K.S. and S.H. to S.H.'s house and, upon arriving, K.S. immediately went downstairs into a basement bedroom and climbed into bed. Still upstairs, Mr. Lowther asked S.H. if he could stay the night. At first she told him no, but eventually she made up a bed on the couch for him. She then joined K.S. in the basement bedroom to sleep. Soon thereafter, Mr. Lowther entered the bedroom and asked S.H. if he could lie between them. She told him no but he climbed in anyway and soon began touching S.H.'s breasts and vagina over her clothes. She pushed him away, got out of bed, and went upstairs.

¶ 5   K.S. was still sleeping during this time, but she eventually awoke to find Mr. Lowther's penis "inside" her. He was lying behind her and holding her down by reaching across her body to grab her wrist. She pushed him away and, after a brief struggle, left the room. She went to the police station later that day and reported the rape. The police had K.S. go to the hospital for a forensic sexual

---

[4] The facts in this case are taken from testimony offered at the preliminary hearing and the evidentiary hearing.

assault examination, and Mr. Lowther's DNA was matched to the detected semen.

*The Alleged Rape of A.P.*

¶ 6   On December 1, 2009, 17-year-old A.P. and her boyfriend attended a party at a home in Draper, Utah. Mr. Lowther also attended the party. Throughout the night, A.P. consumed approximately eight shots of vodka in a two-hour period. She became highly intoxicated and began to vomit. Her boyfriend escorted her into a basement computer room where she could lie down. While in the computer room, she continued to vomit and passed in and out of consciousness. Her boyfriend eventually left to buy her some Sprite and food from a store.

¶ 7   Sometime after A.P.'s boyfriend left, Mr. Lowther entered the room. At some point, the door was locked from the inside. When A.P. awoke, she told Mr. Lowther that she was sick and that her boyfriend had gone to the store for her. After this brief exchange, she lost consciousness. When she next awoke, Mr. Lowther was lying at her side and "dry humping" her. She told him "no" twice, but again lost consciousness. When she awoke the third time, Mr. Lowther was on top of her with his penis inside her. She repeatedly told him to stop and tried to "fight him off," but he held her down. She again lost consciousness. When she eventually awoke, her "pants were at [her] ankles" and Mr. Lowther was lying next to her naked. She got up and left the room.

*The Alleged Rape of C.H.*

¶ 8   Nearly two months later, on February 14, 2010, 18-year-old C.H. and her roommate held a party at their apartment. A mutual friend invited Mr. Lowther, whom C.H. had never met. C.H.'s boyfriend also attended the party. Throughout the night those in the apartment drank beer, and between 8:00 p.m. and 5:00 a.m., C.H. drank ten to fifteen beers, becoming "very intoxicated."[5] At some point during the evening, she broke up with her boyfriend. Afterward, Mr. Lowther became "sympathetic" and tried to comfort her.

---

[5] When asked at the preliminary hearing to identify her level of intoxication on a scale of one to ten—one being barely intoxicated and ten being intoxication requiring hospitalization—C.H. placed herself at a seven or eight.

¶ 9   At about 5:00 a.m., C.H. went to her bedroom and either fell asleep or blacked out. Four guests, including Mr. Lowther, were still in the living room. Sometime thereafter, she awoke to find Mr. Lowther naked and "having sex" with her. She told him to stop and tried "as hard" as she could for several minutes to push him off. After she struggled two or three minutes, he finally got up and left the room. C.H. went into her roommate's bedroom, which adjoined her own, and called the police. After performing a sexual assault examination, the police were unable to recover any semen.

*The Alleged Object Rape of C.R.*

¶ 10 Approximately five months later, on July 19, 2010, 20-year-old C.R. and her boyfriend invited Mr. Lowther and another friend to their apartment for drinks. C.R.'s boyfriend had been friends with Mr. Lowther for over a year. The group drank vodka, and C.R. became "fairly intoxicated," having had five or six shots.[6] Her boyfriend and Mr. Lowther drank more vodka than her, and before she went to bed, she saw Mr. Lowther lying on her counter throwing up into the sink.

¶ 11 Sometime after C.R. and her boyfriend went to bed, she awoke to find Mr. Lowther sitting on top of her legs, reaching up through one leg of her shorts, and penetrating her vagina with his fingers. She kicked him off with her legs and told him to "go home." He immediately left, and she reported the assault to police two months later when she learned that her best friend—K.S.—had also been raped by Mr. Lowther.

*Proceedings Below*

¶ 12 The State filed an information that included charges for the rapes of A.P., C.H., and K.S., and a charge for the object rape of C.R. The information also charged Mr. Lowther with two counts of forcible sexual abuse of S.H., but those charges were eventually dropped because S.H. would not cooperate in the prosecution. After the State filed the information, Mr. Lowther moved to sever the rape counts from each other and from the object rape count, and the district court granted the motion.

¶ 13 The State chose to first try Mr. Lowther for the rape of K.S. and filed notice under rule 404(b) of the Utah Rules of Evidence of its intent to introduce the testimony of A.P., C.H., and C.R. It argued

---

[6] She placed her level of intoxication between five and six on a scale from one to ten at the time she went to bed.

that the victims' testimony regarding Mr. Lowther's prior bad acts would be admissible under the doctrine of chances, adopted by this court in *State v. Verde*,[7] to show that K.S. did not consent to sexual intercourse with Mr. Lowther.[8]

¶ 14 That doctrine "is a theory of logical relevance that 'rests on the objective improbability of the same rare misfortune befalling one individual over and over.'"[9] Evidence of prior bad acts is admissible under the doctrine of chances only if four foundational requirements are satisfied: (1) materiality, (2) similarity, (3) independence, and (4) frequency.[10] The State relied on this doctrine to show that it is objectively improbable that K.S. consented to sexual intercourse where three other witnesses have alleged that Mr. Lowther raped them in a manner similar to the way in which he allegedly raped K.S.

¶ 15 After an evidentiary hearing, the district court concluded that the "introduction of the [testimony of A.P., C.H., and C.R.] against Mr. Lowther [was] offered for a proper, non-character purpose, namely the 'doctrine of chances.'" After assessing the evidence under 404(b), the district court applied the *Shickles* factors to conduct rule 403's balancing test. Those factors aid courts in applying rule 403. Specifically, they encourage courts to look to

> [1] the strength of the evidence as to the commission of the other crime, [2] the similarities between the crimes, [3] the interval of time that has elapsed between the crimes, [4] the need for the evidence, [5] the efficacy of alternative proof, and [6] the degree to which the

---

[7] 2012 UT 60, 296 P.3d 673.

[8] The State's initial rule 404(b) motion was submitted before this court had announced the doctrine of chances in *State v. Verde*. As such, the motion argued that the evidence was admissible to prove intent, modus operandi, lack of accident or mistake, and plan, as well as the victims' lack of consent. But after this court announced the doctrine of chances, the State filed a supplemental brief in support of its initial rule 404(b) motion to seek admission of the witnesses' testimony under the doctrine of chances to prove lack of consent.

[9] *Verde*, 2012 UT 60, ¶ 47 (citation omitted).

[10] *Id.* ¶¶ 57–61.

> evidence probably will rouse the jury to overmastering hostility.[11]

Relying solely on these factors, the court concluded that "even taking into consideration the potential for prejudice, . . . the probative value of introducing the [testimony] outweigh[ed] the degree to which it might rouse the jury."

¶ 16 Mr. Lowther appealed, and the court of appeals affirmed the district court's holding regarding 404(b). But it concluded that the district court's "strict adherence to *Shickles* [was] misplaced" as those factors may have "misdirected its rule 403 analysis, causing it to focus on the 'limited list of considerations outlined in *Shickles*' instead of focusing on the 'text of rule 403.'"[12] Relying on its own precedent, the court of appeals ultimately concluded that in cases involving the doctrine of chances, *Verde*'s four foundational requirements displace the *Shickles* factors. And in applying *Verde* to rule 403, the court of appeals concluded that "A.P.'s testimony encourages a verdict on an improper basis and should have been excluded by the [district] court."[13] As to C.H.'s and C.R.'s testimony, it "remand[ed] the case for further proceedings" under the *Verde* factors and "without consideration of A.P.'s testimony."[14] The State appealed, and we granted certiorari. We have jurisdiction under Utah Code section 78A-3-102(3)(a).

## Standard of Review

¶ 17 We granted certiorari on whether the majority of the panel of the court of appeals erred in applying and delineating the scope of this court's decision in *State v. Verde*[15] with respect to the doctrine of chances. We review the court of appeals' decision for correctness.[16]

---

[11] *State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988) (citation omitted). As discussed below, *infra* ¶ 45 n.81, the district court applied these factors before *State v. Lucero*, 2014 UT 15, 328 P.3d 841, and *State v. Cuttler*, 2015 UT 95, 367 P.3d 981, clarified the proper application of the *Shickles* factors.

[12] *State v. Lowther*, 2015 UT App 180, ¶ 25, 356 P.3d 173 (citation omitted).

[13] *Id.* ¶ 32.

[14] *Id.* ¶ 34.

[15] 2012 UT 60, 296 P.3d 673.

[16] *See id.* ¶ 13.

And "[t]he correctness of the court of appeals' decision turns, in part, on whether it accurately reviewed the [district] court's decision under the appropriate standard of review."[17] The appropriate standard of review for a district court's decision to admit or exclude evidence is "abuse of discretion."[18] A district court abuses its discretion when it admits or excludes "evidence under the wrong legal standard."[19] "[W]hether the district 'court applied the proper legal standard' in assessing the admissibility of . . . evidence is a question of law that we review for correctness."[20] If the district court applied the correct legal standard, it abuses its discretion only when "its decision to admit or exclude evidence 'is beyond the limits of reasonability.'"[21]

**Analysis**

¶ 18 The primary issue before us is whether the court of appeals erred in articulating and applying the doctrine of chances. That court upheld the district court's analysis of rule 404(b),[22] but ultimately concluded that the district court erred when it applied *State v. Shickles*[23] to conclude that the witnesses' testimony was admissible under rule 403.[24] Specifically, the court of appeals held that the district court should have looked to the four foundational

---

[17] *Id.* (first alteration in original).

[18] *State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981.

[19] *Id.*

[20] *Id.* (citation omitted).

[21] *Id.* (citation omitted).

[22] *State v. Lowther*, 2015 UT App 180, ¶¶ 19–20, 356 P.3d 173 (upholding "the trial court's conclusion that the scenarios described by C.R., A.P., and C.H. were sufficiently similar to the scenario described by K.S. to satisfy the similarity prong of the [doctrine of chances] test," but declining to "consider the trial court's analysis of . . . the materiality, frequency, and independence factors in *Verde*'s doctrine of chances" because Mr. Lowther failed to address those issues on appeal).

[23] 760 P.2d 291 (Utah 1988).

[24] *Lowther*, 2015 UT App 180, ¶ 25 ("Given this court's decision . . . to interpret *Verde* as replacing *Shickles*, the trial court's strict adherence to *Shickles* here is misplaced." (citation omitted)).

requirements articulated in *State v. Verde*[25] in conducting a rule 403 balancing test.[26]

¶ 19 On appeal, Mr. Lowther does not directly address the court of appeals' rule 404(b) or 403 analyses as they relate to the doctrine of chances. Instead, he argues that application of the doctrine of chances is premature in this case because he has not made a charge of fabrication. He also argues that under the plain language of rule 403 the risk of unfair prejudice substantially outweighs the probative value of the witnesses' testimony concerning past bad acts, thereby precluding admission of the testimony.

¶ 20 The State, in contrast, directly engages the court of appeals' application of the doctrine of chances. In particular, it argues that the court of appeals erred in concluding that the district court should have considered *Verde*'s four foundational requirements—materiality, similarity, independence, and frequency—in conducting its analysis of the evidence under rule 403. The State argues that the probative value of the testimony offered by A.P., C.H., and C.R. is not substantially outweighed by the risk of unfair prejudice.

¶ 21 As discussed below, we disagree with Mr. Lowther. The doctrine of chances is not limited to rebutting claims of fabrication, and application of the doctrine in this case is not premature. As to the issue of whether the court of appeals erred in concluding that a court must rely on the doctrine of chances in performing both a 404(b) analysis and a 403 analysis, we agree with the State. *Verde*'s foundational requirements assess whether a body of prior bad acts evidence is being employed for a proper, non-character statistical inference. And in performing a rule 403 balancing test, a court is not bound by these foundational requirements. Though we conclude that the court of appeals erred in requiring the district court to rely on *Verde*'s foundational requirements in applying rule 403, we nevertheless hold that the court of appeals was ultimately correct to conclude that the district court abused its discretion by relying solely on the *Shickles* factors when applying rule 403 and admitting the testimony of A.P., C.H., and C.R. We address each issue in turn.

---

[25] 2012 UT 60, 296 P.3d 673.

[26] *Lowther*, 2015 UT App 180, ¶ 25.

## I. The Doctrine of Chances Is Not Limited to Rebutting Claims of Fabrication

¶ 22 Mr. Lowther argues that the doctrine of chances is limited to cases in which a defendant claims that the complaining witness has fabricated her testimony. Because he has not claimed that K.S. has fabricated her testimony, he argues that application of the doctrine in this case was premature and therefore the State's 404(b) evidence should not have been admitted. We reject these arguments.

¶ 23 In *State v. Verde*, we noted that the doctrine of chances "defines circumstances where prior bad acts can properly be used to rebut a charge of fabrication."[27] We did not, however, limit the doctrine to cases involving claims that a witness was fabricating her testimony. In fact, we discussed several scenarios where the doctrine was employed to rebut defenses based on mistake, coincidence, and accident.[28] Since *Verde*, the court of appeals has affirmed the use of the doctrine to rebut lack of intent as a defense.[29] Accordingly, the doctrine of chances is not limited to cases where the defendant accuses a complaining witness of fabricating her testimony, as Mr. Lowther contends.

¶ 24 In this case, the State argued to the district court that the testimony of A.P., C.H., and C.R. was "necessary to show intent to engage in sexual activity without the victims' consent, lack of accident or mistake, and a modus operandi of waiting until the victims were incapable of resisting due to intoxication or lack of consciousness," and the district court ruled the evidence admissible under the doctrine of chances. Mr. Lowther challenges that conclusion, arguing that our decision in *Verde* shows that where intent is not in "*bona fide* dispute," evidence should not be admitted under rule 404(b).

¶ 25 But this argument fails to recognize the differences between this case and *Verde*. In this case, the issues of consent, a component of *actus reus* in a rape charge, and *mens rea*, are both in "*bona fide*

---

[27] 2012 UT 60, ¶ 47, 296 P.3d 673.

[28] *Id.* ¶¶ 48–50.

[29] *See State v. Lomu*, 2014 UT App 41, ¶ 25, 321 P.3d 243 (affirming a district court's decision to admit evidence of a prior "practically identical" armed robbery to rebut the defendant's claim that he did not know that his companions planned to use a gun in the crime).

*dispute.*"[30] To prove *actus reus*, the State must prove that Mr. Lowther had sex with K.S. without her consent. Though the fact that Mr. Lowther and K.S. had sex may not be in *bona fide* dispute because his semen was discovered on her, the question of whether she consented is contested. The doctrine of chances, if its requirements are properly met, is one tool the State may use to prove that K.S. did not consent to sex with Mr. Lowther.

¶ 26 In addition, the State must prove *mens rea*. Unlike in *Verde*, Mr. Lowther's mental state at the time of the alleged rape of K.S. is in *bona fide* dispute here. Mr. Lowther has not, as in *Verde*, offered to stipulate to *mens rea* if the jury finds *actus reus.* Because the issues of consent and *mens rea* are in *bona fide* dispute here,[31] we are not faced with the concerns discussed in *Verde*—specifically, we cannot say that it seems "much more likely" that the prosecution seeks to admit the testimony to "sustain[] an impermissible inference" that Mr. Lowther "acted in conformity with the bad character suggested by his prior bad acts"[32] rather than to sustain the permissible statistical inferences arising from the doctrine of chances.

¶ 27 Thus, the doctrine of chances is applicable to this case and it was not applied prematurely.[33] Below, we discuss more fully the

---

[30] *Verde*, 2012 UT 60, ¶ 57 (citation omitted).

[31] These disputes make this case different from *Verde*. In *Verde*, the defendant's offer to stipulate to intent undercut the State's arguments that the prior bad acts evidence was actually being offered to prove intent. But in this case, Mr. Lowther has not made an offer that if the jury finds "the [sexual intercourse with K.S. without her consent] occurred, defendant [stipulates] that the defendant did it [with the requisite mental state]." *Id.* ¶ 25. Even if Mr. Lowther were to so stipulate—thereby restricting his defense to lack of *actus reus*—the other witnesses' testimony would still be relevant to the issue of consent, and therefore admissible for that purpose if the doctrine of chances requirements are met.

[32] *Id.* ¶ 26 ("*Where intent is uncontested and readily inferable from other evidence*, 404(b) evidence is largely tangential and duplicative. It is accordingly difficult to characterize its purpose as properly aimed at establishing intent."(emphasis added) (footnote omitted)).

[33] Mr. Lowther quotes *Verde* for the proposition that "[a] charge of fabrication is insufficient by itself to open the door to evidence of any and all prior bad acts." *Id.* ¶ 55. As applied to his case, he "urges [us]

(Continued)

doctrine of chances and its relationship to the rules of evidence, concluding that the doctrine does not require a district court to consider any specific list of factors to assess the probative value of evidence under rule 403 of the Utah Rules of Evidence.

## II. *Verde*'s Four Foundational Requirements Do Not Displace the *Shickles* Factors

¶ 28 Below, the court of appeals concluded that in the context of the doctrine of chances *State v. Verde*'s[34] four foundational requirements have displaced *State v. Shickles*[35] for purposes of a rule 403 balancing test.[36] In response, the State argues that *Verde*'s foundational requirements do not apply to rule 403 because "the doctrine of chances is a theory of logical relevance that demonstrates why the [prior bad acts] evidence is relevant to a proper, non-propensity purpose under rule 404(b)." And because rule 403 does not assess relevancy but balances the probative value of the evidence against the risk of unfair prejudice, the State contends that "rule 403 concerns come into play only *after* the [district] court has determined that the evidence is relevant and admissible under rule 404(b)."

---

to adopt a standard allowing admissibility under [the] doctrine of chances if the charge of fabrication is about a witness's testimony regarding specific facts material and relevant to the pending case, rather than a general attack on the witness's credibility or character."

Mr. Lowther misreads *Verde*. In context, we were rejecting the court of appeals' decision to affirm introduction of Mr. Verde's prior misconduct under a "vague notion of [the] doctrine of chances" and "[w]ithout denominating the doctrine as such or elaborating on its elements." *Id.* ¶ 54. In other words, we reversed the court of appeals in that case because it held Mr. Verde's prior bad acts to be admissible without analyzing the evidence under the doctrine of chances. In remanding the case, we left it to the district court to apply the doctrine of chances to determine whether his prior bad acts were admissible to rebut the charge of fabrication. *Id.* ¶ 62.

[34] 2012 UT 60, 296 P.3d 673.

[35] 760 P.2d 291 (Utah 1988).

[36] *State v. Lowther*, 2015 UT App 180, ¶ 25, 356 P.3d 173 ("Given this court's decision . . . to interpret *Verde* as replacing *Shickles*, the trial court's strict adherence to *Shickles* here is misplaced." (citation omitted)); *see id.* ¶¶ 25–29 (applying each of *Verde*'s foundational requirements "to determine whether sufficient grounds for admission exist here despite the court's application of [*Shickles*]").

¶ 29 As discussed below, we agree with the State. *Verde*'s foundational requirements have not displaced the *Shickles* factors for purposes of rule 403. We have repeatedly stated that courts are not bound to any particular set of factors or elements when conducting a rule 403 balancing test.[37] And while *Verde*'s requirements may help a court assess the probative value of prior bad acts evidence, we clarify that in evaluating doctrine of chances evidence under rule 403, a court may consider any relevant fact and need not necessarily consider *Verde*'s foundational requirements or limit its analysis to these requirements.

¶ 30 The Utah Rules of Evidence provide a framework for distinguishing permissible uses of evidence from impermissible uses. As a general matter, relevant evidence is admissible under the rules.[38] But "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character."[39] Such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[40] In addition, the evidence must meet the requirements of rule 403, which provides that relevant evidence *may* be excluded if its probative value is "'substantially outweighed by the danger of unfair prejudice.'"[41]

---

[37] *See infra* ¶ 34 n.54.

[38] *See* UTAH R. EVID. 402.

[39] UTAH R. EVID. 404(b)(1).

[40] UTAH R. EVID. 404(b)(2). We note that we have at times characterized rule 404(b) as being an "inclusionary" rule. *See, e.g.*, *State v. Decorso*, 1999 UT 57, ¶ 24, 993 P.2d 837, *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016. We take this occasion to recognize the potential for confusion that could be sown by this language. In some ways, describing the rule as "inclusionary" may give the impression that evidence is presumed to be admissible. To avoid confusion, we repudiate that characterization and look to the plain language of rule 404(b) for the standard for the admissibility of evidence: it does not carry with it an attendant presumption of either admissibility or inadmissibility.

[41] *State v. Allen*, 2005 UT 11, ¶ 24, 108 P.3d 730 (citation omitted).

¶ 31 In *State v. Verde*, we articulated the doctrine of chances within the context of a 404(b) analysis. We described the doctrine as "defin[ing] circumstances where prior bad *acts* can properly be used to rebut a charge of fabrication," mistake, coincidence, or accident.[42] We further described the doctrine as "a theory of logical *relevance* that 'rests on the objective improbability of the same rare misfortune befalling one individual over and over.'"[43] As an example of the doctrine's application, we noted that

> [w]hen one person claims rape, the unusual and abnormal element of lying by the complaining witness may be present. But when two (or more) persons tell similar stories, the chances are reduced that both are lying or that one is telling the truth and the other is coincidentally telling a similar false story.[44]

In other words, the doctrine "starts with [a] low baseline probability" that a certain event would occur and "considers the effect on these already low probabilities of additional, similar occurrences."[45] "At some point, '[t]he fortuitous coincidence becomes too abnormal, bizarre, implausible, unusual or objectively improbable to be believed.'"[46]

¶ 32 In articulating this doctrine, we set forth an elemental test. Specifically, we noted that "[u]nder the doctrine of chances, evidence . . . must not be admitted absent satisfaction of four foundational requirements, which should be considered within the context of a rule 403 balancing analysis."[47] Those four foundational requirements are (1) materiality, (2) similarity, (3) independence, and (4) frequency.[48] When each of these requirements has been met, a court should conclude that rule 404(b) has been satisfied regarding certain

---

[42] 2012 UT 60, ¶¶ 47–49 (emphasis added). While we have examined the doctrine of chances in the context of "evidence offered to prove *actus reus*," *id.* ¶ 57, as explained above, it may also be invoked to prove *mens rea*. *See supra* ¶ 26.

[43] *Id.* ¶ 47 (emphasis added) (citation omitted).

[44] *Id.* ¶ 48 (citation omitted).

[45] *Id.* ¶ 49.

[46] *Id.* (citation omitted).

[47] *Id.* ¶ 57 (citation omitted).

[48] *Id.* ¶¶ 57–61.

prior bad acts evidence[49] and proceed to assess the evidence under rules 402 and 403.

¶ 33 As noted above, the court of appeals has interpreted *Verde*'s directive to consider the four foundational requirements "within the context of a rule 403 balancing analysis" to require application of the requirements to rules 404(b) *and* 403.[50] The court of appeals perceived this interpretation to be in tension with then-controlling precedent, *State v. Shickles*, where we articulated several factors district courts should consider in conducting a rule 403 balancing test. Specifically we noted that

> In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including [1] the strength of the evidence as to the commission of the other crime, [2] the similarities between the crimes, [3] the interval of time that has elapsed between the crimes, [4] the need for the evidence, [5] the efficacy of alternative proof, and [6] the degree to which the evidence probably will rouse the jury to overmastering hostility.[51]

---

[49] Mr. Lowther argues that the "State seeks to use the doctrine of chances" to "water[] down the analysis under" rules 404(b) and 403. This argument is based on a requirement, found in our *Nelson-Waggoner* line of cases, that district courts "scrupulously examine" evidence to ensure that it was truly being offered for a non-character purpose. The State disagrees that the doctrine of chances represents a watering down. It contends that the requirements of the doctrine of chances are, if anything, more stringent than the standard scrupulous examination requirement. In any event, we need not decide this issue because we have recently repudiated the "scrupulous examination" requirement. *See State v. Thornton*, 2017 UT 9, ¶ 3, --- P.3d ---.

[50] *State v. Labrum*, 2014 UT App 5, ¶¶ 26–27, 318 P.3d 1151 (quoting *Verde*, 2012 UT 60, ¶ 57).

[51] 760 P.2d 291, 295–96 (Utah 1988) (citation omitted). As discussed below, in cases subsequent to *Shickles*, we have instructed courts not to make a mechanical application of these factors but to apply the text of rule 403. *See State v. Lucero*, 2014 UT 15, ¶ 32, 328 P.3d 841.

The court of appeals has resolved that tension by concluding that "[w]here the context involves a doctrine of chances analysis, we read *Verde* as having displaced the *Shickles* factors—for purposes of assessing the 'probative value' aspect of the rule 403 analysis—with a focus on materiality, similarity, independence, and frequency."[52] Significantly, in this case, it recast *Verde*'s four foundational requirements as "factors" for purposes of a rule 403 analysis.[53]

¶ 34 This interpretation of *Verde* and its relationship to rule 403 is inconsistent with our recent decisions that have repudiated an approach to rule 403 that ignores the text and mechanically applies a set of factors.[54] As such, suggesting that the *Verde* requirements have displaced the *Shickles* factors in cases where the doctrine of chances is involved—as the court of appeals has done—may lead courts to conclude that they must "moor [their] rule 403 analysis entirely and exclusively" to the *Verde* foundational requirements.[55] We therefore reject the court of appeals' approach.

¶ 35 But we do not suggest that *Verde*'s foundational requirements are irrelevant to the probative value of prior bad acts evidence. The requirements may bear directly on such evidence's probative value. As noted above, *Verde* requires a court to consider (1) materiality, (2) similarity, (3) independence, and (4) frequency. First, under materiality, "[t]he issue for which the uncharged

---

[52] *Labrum*, 2014 UT App 5, ¶ 28.

[53] *Lowther*, 2015 UT App 180, ¶ 25 ("Thus, we will now consider the trial court's rule 403 analysis under the *Verde* factors[.]").

[54] *See State v. Cuttler*, 2015 UT 95, ¶ 18, 367 P.3d 981 ("[T]he *Shickles* factors should not limit the considerations of a court when making a determination of evidence's admissibility under rule 403. Instead, courts are 'bound by the test of rule 403,' and it is 'unnecessary for courts to evaluate each and every [*Shickles*] factor' in every context." (citation omitted)); *State v. Lucero*, 2014 UT 15, ¶ 32, 328 P.3d 841 ("Since our decision in *Shickles*, a number of courts have relied heavily on [its] list of factors in weighing evidence under rule 403. . . . [C]ourts are bound by the text of rule 403, not the limited list of considerations outlined in *Shickles*."); *see also Met v. State*, 2016 UT 51, ¶ 90, 388 P.3d 447 (repudiating the multi-factor test outlined in precedent for determining whether an allegedly gruesome photograph's probative value is substantially outweighed by the risk of unfair prejudice).

[55] *Cuttler*, 2015 UT 95, ¶ 19.

misconduct evidence is offered '*must be in bona fide dispute.*'"[56] The aim of this foundational requirement is to ensure "a careful evaluation of the true—and predominant—purpose of any evidence proffered under rule 404(b)."[57]

¶ 36 Second, under the similarity requirement, "the similarities between the charged and uncharged incidents must be 'sufficient to dispel any realistic possibility of independent invention.'"[58] This foundational requirement aids in assessing the probative value of a body of prior bad acts evidence. "[T]he more similar, detailed, and distinctive the various accusations, the greater is the likelihood that they are not the result of independent imaginative invention."[59] And if they are not the result of independent imaginative invention, "the likelihood that the defendant committed one or more of the actions increases."[60]

¶ 37 The third foundational requirement, independence, recognizes that "the probative value of similar accusations evidence rests on the improbability of chance repetition of the same event."[61] "Where the prior uncharged conduct is an accusation of sexual assault, each accusation must be independent of the others" because "the existence of collusion among various accusers would render ineffective the comparison with chance repetition."[62] Where witnesses are in collusion, the statistical significance of the multiple false accusations fades and the probability that the defendant has been falsely accused increases.

¶ 38 Finally, the fourth foundational requirement is frequency. Under this requirement, "[t]he defendant must have been accused of

---

[56] *Verde*, 2012 UT 60, ¶ 57 (citation omitted).

[57] *Id.* ¶¶ 22, 25–27 (concluding that a not guilty plea was insufficient to place the issue of a defendant's intent in bona fide dispute, especially where the defendant did not contest intent at trial but based his defense on never having touched the genitalia of the victim).

[58] *Id.* ¶ 59 (citation omitted).

[59] *Id.* ¶ 58 (alteration in original) (citation omitted).

[60] *Id.* ¶ 49.

[61] *Id.* ¶ 60 (citation omitted).

[62] *Id.*

the crime or suffered an unusual loss '*more frequently than the typical person endures such losses accidentally.*'[63] "It is this infrequency that justifies the probability analysis under the doctrine of chances" because "[g]iven the infrequent occurrence of false rape and child abuse allegations relative to the entire eligible population, [the probability] that the same innocent person will be the object of multiple false accusations is extremely low."[64]

¶ 39 Taken together, these foundational requirements operate upon an *entire body* of prior bad acts evidence to determine whether the evidence is being offered for purposes of a proper, non-character statistical inference: the "objective improbability of the same rare misfortune befalling one individual over and over."[65] And in making that assessment, they also provide a preliminary measure of the probative value of the evidence. The probative value of several witnesses' independent testimony of substantially similar events is high, and the frequency of the occurrence of those events justifies a 404(b) statistical inference.

¶ 40 As such, the facts a court considers in connection with *Verde*'s foundational requirements and rule 404(b) may have relevance at the rule 403 stage. But a district court need not, as the court of appeals suggests, cabin its rule 403 analysis solely to these *Verde* requirements.[66] It instead has discretion to consider any relevant factors that assist in determining whether the "probative value" of the witnesses' testimony is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[67] Thus, concluding that *Verde* displaces the

---

[63] *Id.* ¶ 61 (citation omitted).

[64] *Id.* (citation omitted).

[65] *Id.* ¶ 47 (citation omitted).

[66] We note that *Verde*'s foundational requirements are requirements within the context of rule 404(b). A court must find that each of the requirements has been satisfied to admit doctrine of chances evidence for purposes of a proper, non-character statistical inference. A court may consider, however, some of the same facts it considered in connection with *Verde*'s foundational requirements for purposes of a rule 403 balancing test. These considerations are not requirements within the context of rule 403.

[67] UTAH R. EVID. 403.

*Shickles* factors is inconsistent with our precedent and unnecessary given the purpose of the doctrine of chances. As we have discussed, *Verde* did not displace anything; the text of rule 403 is what controls, not any particular set of factors.

¶ 41 We therefore reiterate that district courts are bound by the language of rule 403 rather than any set of factors or elements. In evaluating doctrine of chances evidence under rule 403, "courts may consider many factors, including some of those we identified in *Shickles*."[68] Further, to the extent a district court finds some of the same facts it is asked to consider under *Verde*—facts that bear on the similarity, independence, or frequency inquiries—useful in assessing the probative value of evidence, it should feel free to take those facts into account. In the end, we reemphasize that "courts are 'bound by the text of rule 403,' and it is 'unnecessary for courts to evaluate each and every . . . factor' in every context.'"[69]

¶ 42 As applied to this case, we hold that the court of appeals erred in concluding that the *Verde* foundational requirements have displaced the *Shickles* factors for purposes of rule 403. A court is bound by the text of rule 403, and it is free to consider any relevant factors when balancing the probative value of evidence against its risk for unfair prejudice. Relying on this standard, we now look to the court of appeals' review of the district court's application of rule 403 to this case, and we conclude that the district court abused its discretion.

### III. The Court of Appeals Correctly Concluded that the District Court Improperly Applied Rule 403

¶ 43 As noted above, the court of appeals concluded that the district court erred in limiting its rule 403 analysis solely to the factors outlined in *State v. Shickles*,[70] and held that it should have instead focused on *State v. Verde*'s[71] foundational requirements and the text of rule 403.[72] It then proceeded to "consider the [district] court's rule 403 analysis under the *Verde* factors . . . to determine whether sufficient grounds for admission exist . . . despite the court's

---

[68] *Cuttler*, 2015 UT 95, ¶ 18.

[69] *Id.* (citation omitted).

[70] 760 P.2d 291 (Utah 1988).

[71] 2012 UT 60, 296 P.3d 673.

[72] *State v. Lowther*, 2015 UT App 180, ¶ 25, 356 P.3d 173.

application of [the *Shickles* factors]."[73] Applying *Verde*, the court of appeals concluded that the district court should not have admitted A.P.'s testimony because it was not sufficiently similar to K.S.'s testimony.[74] It remanded for the district court to "reconsider C.R.'s and C.H.'s testimonies under [*Verde*] and without consideration of A.P.'s testimony."[75]

¶ 44 Though the district court did not err in its failure to consider *Verde*'s foundational requirements in the context of rule 403, we agree with the court of appeals that its "application of *Shickles* actually misdirected its rule 403 analysis, causing it to focus on the 'limited list of considerations outlined in *Shickles*' instead of focusing on the 'text of rule 403.'"[76] The district court expressly noted that it was "tasked with considering the *Shickles* factors" to perform a rule 403 balancing test. It then "moor[ed] its rule 403 analysis entirely and exclusively to all of the *Shickles* factors."[77] Further, it did not rely on the text of rule 403 to assess the risk of unfair prejudice, but focused on the language in *Shickles* to assess "the degree to which [the 404(b)] evidence . . . might rouse the jury to overmastering hostility."[78]

¶ 45 We have expressly disavowed this type of mechanical application of the *Shickles* factors and have concluded that "it is inappropriate for a district court to ever consider whether evidence will lead a jury to 'overmastering hostility.'"[79] A court must instead bind its analysis to the text of rule 403, considering those factors that

---

[73] *Id.*

[74] *Id.* ¶ 27.

[75] *Id.* ¶ 34.

[76] *Id.* ¶ 25 (quoting *State v. Lucero*, 2014 UT 15, ¶ 32, 328 P.3d 84).

[77] *State v. Cuttler*, 2015 UT 95, ¶ 19, 367 P.3d 981.

[78] *See Shickles*, 760 P.2d at 296 ("[T]he degree to which the evidence probably will rouse the jury to overmastering hostility." (citation omitted)).

[79] *Cuttler*, 2015 UT 95, ¶ 20 ("Since the overmastering hostility factor under *Shickles* is at best judicial gloss and at worst a substitute test for evidence's admissibility under rule 403, we now make clear that it is inappropriate for a court to consider the overmastering hostility factor in a rule 403 analysis.").

are appropriate given the particular circumstances of the case.[80] As such, the district court applied the incorrect legal standard to rule 403, "[a]nd the admission or exclusion of evidence under the wrong legal standard constitutes an abuse of discretion."[81] Thus, we remand for the court to evaluate the State's prior bad acts evidence under the text of rule 403.

¶ 46 We understand the court of appeals' concern regarding the testimony of A.P. As noted above, the court of appeals concluded that while A.P.'s testimony was sufficiently similar to K.S.'s testimony for purposes of rule 404(b), the dissimilarities—the presence of physical restraint and "extreme level of intoxication"— "could be 'particularly inflammatory relative to the instant crime.'"[82] But unlike the court of appeals, we do not rule this evidence inadmissible under rule 403. Instead we direct the district court to focus generally on the extent to which the "tendency [of A.P.'s testimony] to sustain a proper inference is outweighed by its propensity for an improper inference or for jury confusion about its

---

[80] *See Lucero*, 2014 UT 15, ¶ 32 ("[C]ourts are bound by the text of rule 403, not the limited list of considerations outlined in *Shickles*.").

[81] *Cuttler*, 2015 UT 95, ¶ 12 (citation omitted). We note that the district court's mechanical application of *Shickles* is understandable in this case because it ruled on the admissibility of A.P., C.H., and C.R.'s testimony nearly two years before we decided *State v. Lucero*, where we clarified that courts should not rely exclusively on the *Shickles* factors but should instead focus on the text of rule 403. *See* 2014 UT 15. Although the district court performed the analysis that was dictated by then-existing precedent, it nevertheless abused its discretion because it applied a legal standard we have since concluded is incorrect. For example, the district court quoted *State v. Killpack* for the proposition that "[o]nly when evidence poses a danger of 'rous[ing] the jury to overmastering hostility' does it reach the level of unfair prejudice that rule 403 is designed to prevent." 2008 UT 49, ¶ 53, 191 P.3d 17 (citation omitted) (second alteration in original). But this language was expressly repudiated by our decision in *Cuttler*, which implicitly overruled *Killpack*. *See supra* ¶ 45 n.79.

[82] *Lowther*, 2015 UT App 180, ¶ 27 (citation omitted).

real purpose,"[83] and not on whether the evidence would "rouse the jury to overmastering hostility"—a now defunct standard.[84]

¶ 47 In summary, the court of appeals is correct that the district court abused its discretion by mechanically applying the *Shickles* factors. But the court of appeals erred in concluding that the district court was required to apply *Verde*. We accordingly direct the district court to reconsider the testimony of A.P., C.H., and C.R. under the text of rule 403.

## Conclusion

¶ 48 The doctrine of chances is not limited solely to rebutting claims of fabrication, and its application in this case was not premature. Further, the court of appeals erred when it concluded that the district court was required to consider the foundational requirements outlined in *State v. Verde*[85] in its rule 403 balancing test. But it did not err when it concluded that the district court abused its discretion by rigidly applying the factors outlined in *State v. Shickles*.[86] Because Mr. Lowther has prevailed on appeal, he is entitled to withdraw his guilty plea[87] and request that the district court reconsider his challenge to the witnesses' testimony under the standard articulated in this opinion. If he does so, the district court should carefully consider the text of rule 403 of the Utah Rules of Evidence and balance the probative value of the testimony of A.P., C.H., and C.R. against the risk of unfair prejudice.

───────────────

[83] *Verde*, 2012 UT 60, ¶ 18.

[84] *Cuttler*, 2015 UT 95, ¶ 16 n.5 (citation omitted).

[85] 2012 UT 60, 296 P.3d 673.

[86] 760 P.2d 291 (Utah 1988).

[87] *See* UTAH R. CRIM. P. 11(j) ("A defendant who prevails on appeal [from a conditional guilty plea] shall be allowed to withdraw the plea.").