**2025 UT App180**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RAYMOND DALE HOFELING,
Appellant.

Opinion
No. 20230646-CA
Filed December 11, 2025

First District Court, Brigham City Department
The Honorable Brandon J. Maynard
No. 211100095

Wendy M. Brown, Debra M. Nelson, and
Benjamin Miller, Attorneys for Appellant

Brian P. Duncan, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

MORTENSEN, Judge:

¶1     Raymond Dale Hofeling was convicted on two counts of sexual battery after he inappropriately touched two underaged female employees he supervised. On appeal, he asserts (1) the State failed to provide sufficient evidence to convict him on either count and (2) his attorney (Counsel) rendered ineffective assistance when, during closing argument, he referred to a notorious free speech case involving neo-Nazis in Skokie, Illinois, in the 1970s. We conclude that the evidence before the jury was sufficient to support Hofeling's convictions. We do not address whether Counsel's reference to the Skokie case constituted deficient performance because Hofeling has not demonstrated prejudice. We therefore affirm Hofeling's convictions.

## BACKGROUND[1]

*Hofeling Is Charged with Two Counts of Sexual Battery*

¶2 Hofeling was a manager at a restaurant. Lindsay and Megan, two underaged girls who worked at the restaurant, reported that the 34-year-old Hofeling had inappropriately touched them at work.[2] Hofeling was charged with two counts of sexual battery, one for his conduct with each girl. The matter proceeded to a two-day jury trial. On the first day of trial, two police officers who investigated the allegations testified. On the second day, Lindsay and Megan testified.

*Lindsay's Testimony*

¶3 Before Lindsay testified, the district court read an instruction to the jury based on rule 404 of the Utah Rules of Evidence. The court explained,

> [Y]ou are about to hear evidence that the defendant made sexual comments to the witness who is an alleged victim before and after the alleged act charged in this case. This evidence is not admitted to prove a character trait of the defendant or to show that he acted in a manner consistent with that trait. You may consider this evidence, if at all, for the limited purpose of showing that the defendant knew that it would cause affront or alarm and that the touching was intentional and not an accident. Keep in mind that the defendant is on trial for the crimes charged in this case and for those crimes

---

1. "On appeal from a jury verdict, we recite the facts in the light most favorable to that verdict." *State v. Diaz*, 859 P.2d 19, 20 (Utah Ct. App. 1993).

2. Lindsay and Megan are pseudonyms.

only. You may not convict the defendant simply because you believe he may have committed some other acts at another time.

¶4 Lindsay testified that she was 17 years old when she worked with Hofeling at the restaurant. On one occasion, Hofeling had been "very persistent about telling [Lindsay] that [she] was pretty and that [she] looked really good" that day. Referring to Lindsay's age, Hofeling said, "I shouldn't be talking to you like this, huh?" Lindsay responded, "Yeah, probably not."

¶5 Lindsay testified about other instances of Hofeling's inappropriate behavior. On one occasion, she was restocking some utensils and asked Hofeling "where to put the extra straws." Hofeling replied, "[B]end over and I'll show you." In another instance, Lindsay needed to access the cash register and asked Hofeling for the keys. Hofeling was busy but said that Lindsay could just grab the keys out of his pocket and that "the cameras would basically see [her] . . . trying to touch his . . . weenie." On still another occasion, Hofeling told Lindsay that "he would wait for [her] in the parking lot for when [she] got off work, . . . kidnap [her] and put [her] in his trunk, take [her] out to the desert and [do] whatever the drugs [would] make [them] do." She responded, "[W]hoa, . . . that's kind of crazy." Hofeling told Lindsay that she could not "claim rape."

¶6 In response to this behavior, Lindsay "tried to kind of brush it off at first" and "kind of laughed it off." Realizing that Hofeling was "not planning to stop anytime soon," however, Lindsay became "[r]eally, really uncomfortable."

¶7 The incident underlying the count related to Lindsay occurred when Hofeling came "up behind [her] and hit [her] butt" with "a closed fist." She testified, "I felt [Hofeling's] hand hit my butt and I kind of was like really shocked . . . ." While she again "tried to brush it off," she "knew [Hofeling] did it on purpose." Hofeling told her, "I hit your butt," and she responded, "[O]h

yeah, but it was an accident. It's fine." Hofeling told her, "I bet you liked it, though." Lindsay believed that things had moved "past inappropriate humor" and that Hofeling was "now purposely making [her] uncomfortable and . . . enjoying it."

*Megan's Testimony*

¶8      After Lindsay testified, the State called Megan. The district court again read the rule 404 instruction to the jury. Megan began by testifying that she worked with Hofeling when she was "16, 17, around there." On one occasion, Megan "was on a ladder, and [Hofeling] was . . . staring" at her. When Megan asked Hofeling what he was staring at, Hofeling responded, "[O]h, that butt, like it's amazing." On other occasions, Hofeling would comment on "what [Megan] was wearing" and tell her that he "missed [her] when [she] wasn't at work."

¶9      Megan frequently worked the drive-through window, so she was not near other employees very often. Nonetheless, Hofeling, who worked in another area of the restaurant and had little need to be in the drive-through area, would walk past Megan and "brush up against [her] butt." Megan acknowledged that other employees would walk by and make incidental contact with her "once in a great while." But the only employee who "had a pattern of brushing against [her] butt" was Hofeling.

¶10     The incident underlying the count related to Megan occurred when Hofeling "just . . . reached out and . . . touched [her] butt" with "[t]he inside of his hand." She testified that she "felt his fingers and hands . . . across [her] butt when he walked by."

*The Jury Convicts Hofeling on Both Counts*

¶11     After Megan testified, the State rested. Counsel then moved for a directed verdict on both counts, arguing that there was insufficient evidence to establish "the intentionality of the

touching." The State noted the frequency of the touching and the comments and argued that there was enough to establish that Hofeling acted intentionally. The State also argued, "[I]n terms of alarm, . . . there's been plenty of testimony about how much it bothered [Lindsay and Megan]. One called the police. They both talked to management." The district court agreed with the State and denied the motion. The court explained,

> Based on the evidence that I have heard in this case, there is sufficient evidence that a reasonable jury could find that these events happened, that the elements have been met as outlined, specifically as was raised by [Counsel], the intentionality aspect given the circumstantial evidence surrounding the events as well as the events themselves, a jury could find that. So I'll deny the motion . . . .

¶12 Hofeling elected not to testify and did not call any witnesses. The court then read the closing instructions to the jury, and the case proceeded to closing arguments. Counsel began his argument by telling the jury about civil rights attorney David Goldberger. In the 1970s, Goldberger, who is Jewish, represented neo-Nazis seeking to demonstrate and march in Skokie, Illinois, which had a sizable Jewish population. *See generally* David Goldberger, *Clients Everyone Hates*, 21 Litigation 10 (Spring 1995). Counsel also displayed a photograph of Goldberger and another of Frank Collin, the leader of the neo-Nazi group that Goldberger represented in the case. In the photograph, Collin is dressed in easy-to-identify brown-shirt Nazi garb with a full-size Nazi swastika flag hanging behind him. Counsel stated,

> Mr. Goldberger is one of my heroes because he represented this piece of trash. . . . Mr. Goldberger represented the people that he despised, who had a message that he hated, who were literally espousing for the death of people just like Mr. Goldberger, just

because of who they were. And what did Mr. Goldberger do? He represented them because he knew that in order to protect the rights of freedom fighters, you also had to protect the rights of fascists.

Apparently likening Hofeling's case to the Skokie case, Counsel argued that the State was asking the jury to punish Hofeling "for his words, not his actions." Counsel concluded, "If you want to protect your freedom of speech, you have to protect Mr. Hofeling's freedom of speech. They are one and the same."

¶13 The jury convicted Hofeling on both counts. He now appeals.

ISSUES AND STANDARDS OF REVIEW

¶14 Hofeling argues first that the district court erred when it ruled that the State presented sufficient evidence to establish that he knew or should have known he would "likely cause affront or alarm" to Lindsay and Megan by touching them. *See* Utah Code § 76-9-702.1(1) (2019).[3] "We review the district court's denial of a motion for directed verdict for correctness." *State v. Barner*, 2020 UT App 68, ¶ 9, 464 P.3d 190 (cleaned up). But when a defendant "challenges the denial of a motion for a directed verdict based on the sufficiency of the evidence," as Hofeling does here, "the applicable standard of review is highly deferential." *Id.* (cleaned up). In such a case, "we will uphold the district court's denial if, when viewed in the light most favorable to the State, some evidence exists from which a reasonable jury could find that the

---

3. Since the time of the offenses, Utah Code section 76-9-702.1 has been amended and renumbered as section 76-5-418. *Compare* Utah Code § 76-9-702.1 (2019), *with id.* § 76-5-418 (2025). Although the amended language is substantially similar to the previous language, we cite and rely on the statute in effect at the time of the offenses.

elements of the crime have been proven beyond a reasonable doubt." *Id.* (cleaned up).[4]

¶15 Hofeling also argues that Counsel rendered ineffective assistance of counsel in discussing the neo-Nazi march in Skokie during closing argument. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Fleming*, 2019 UT App 181, ¶ 7, 454 P.3d 862 (cleaned up).

ANALYSIS

I. Sufficiency of the Evidence

¶16 Hofeling argues that the district court should have granted the directed verdict because the State failed to prove, as required by Utah law, that he knew or should have known that his conduct would cause affront or alarm to Lindsay and Megan. Because the evidence readily supported conviction on both counts under the plain language of the statute, we disagree.

¶17 The governing statute provides in relevant part that "[a] person is guilty of sexual battery if the person . . . intentionally touches, whether or not through clothing, the . . . buttocks . . . of another person . . . and the actor's conduct is under circumstances the actor knows or should know will likely cause affront or alarm

---

4. The State argues that this issue wasn't preserved because Counsel did not specifically assert in his motion that the State failed to offer sufficient evidence to establish the "affront" or "alarm" element of the statute. "If the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation." *State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 (cleaned up). Such is the case here because we can easily resolve the merits of the claim in the State's favor.

to the person touched." Utah Code § 76-9-702.1(1) (2019). Hofeling cites seven cases he claims demonstrate that "[s]exual battery involves much more egregious conduct than what was seen here." Without citation to any other authority, Hofeling seemingly operates on the assumption that the cases he cites set the minimum conduct necessary to support a conviction for sexual battery. In fact, the text of the statute establishes that threshold. *Cf. State v. Tryba*, 2000 UT App 230, ¶ 13, 8 P.3d 274 ("Where the statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent." (cleaned up)). And the statute makes clear that any intentional touching of "the buttocks of another person" that "will likely cause affront or alarm to the person touched" qualifies as sexual battery. Utah Code § 76-9-702.1(1) (2019).

¶18 The statute does not define "affront" or "alarm." In *State v. Von Niederhausern*, however, we explained that the district court had properly used "the dictionary definitions of 'affront' and 'alarm' as the ordinary meaning of [the] word[s] to a reasonable person familiar with the usage and context in question." 2018 UT App 149, ¶ 28, 427 P.3d 1277 (cleaned up). Specifically, the court had instructed the jury that "'affront' means an insult or indignity; an action or remark that causes outrage or offense or that offends modesty or values" and that "'alarm' means an anxious awareness of danger; something that causes a person to feel frightened, disturbed, or in danger."[5] *Id.* ¶ 25 n.8.

¶19 With these definitions in mind, we readily conclude that there was evidence from which the jury could have found beyond

---

5. While the jury was not specifically instructed on the definitions of "affront" and "alarm" in Hofeling's case, it was instructed elsewhere that it "should give all words their usual and ordinary meanings," unless the instructions otherwise provided a definition. Hofeling does not argue that the instructions as given were incomplete or otherwise erroneous.

a reasonable doubt that Hofeling knew he would cause affront or alarm to Lindsay when he touched her buttocks. In one incident, Hofeling had been "very persistent about telling [Lindsay] that [she] was pretty and that [she] looked really good." Recognizing their age difference, Hofeling admitted to Lindsay that he probably should not have been talking to her that way. Such evidence is plainly sufficient to support a determination that Hofeling knew or should have known that touching Lindsay's buttocks would have disturbed her or otherwise caused her outrage or offense.

¶20 The evidence of Hofeling's mens rea on the count related to Megan was less direct, but no less probative. Hofeling told Megan that her "butt [was] amazing" and that he missed her when she wasn't at the restaurant. He made similar comments to Lindsay that he knew were inappropriate, given their age difference. Considering that Megan was also underaged and working under his apparent supervision, this evidence was enough for a jury to properly find, beyond a reasonable doubt, that Hofeling knew or should have known that touching Megan's buttocks would disturb her or otherwise cause her outrage or offense.

¶21 Finally, on appeal, Hofeling does not contest the jury's finding that he intentionally touched Lindsay's and Megan's buttocks. And because the jury could readily conclude beyond a reasonable doubt that the touching occurred under circumstances he knew or should have known would likely cause affront or alarm to Lindsay and Megan, *see* Utah Code § 76-9-702.1(1) (2019), Hofeling has failed to establish that the district court erred in denying his motion for a directed verdict.

## II. Ineffective Assistance of Counsel

¶22 Hofeling also argues that Counsel rendered ineffective assistance when, during closing argument, he told the jury about David Goldberger and the neo-Nazi march and displayed the

photograph described above. We need not consider whether Counsel's statement constituted deficient performance in this case because Hofeling has not demonstrated prejudice. His ineffective assistance claim therefore falls short.

¶23 To prevail on a claim for ineffective assistance of counsel, a defendant must demonstrate that "(1) counsel's performance was objectively deficient and (2) the deficient performance resulted in prejudice." *State v. Fleming*, 2019 UT App 181, ¶ 9, 454 P.3d 862 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Where, as here, the defendant fails to establish prejudice, we need not address deficient performance.[6] *Id.* Establishing prejudice requires the defendant to "show that the deficient performance harmed the defense." *State v. Hamberlin*, 2025 UT App 131, ¶ 32, 577 P.3d 912. In practice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" in such a way that it "erode[s] our confidence in the outcome." *Id.* (cleaned up). To make this determination, we assess the counterfactual scenario—the "alternative universe in

---

6. Hofeling argues that Counsel's reference to the Skokie case constituted deficient performance. Judge Tenney recently explained in a concurring opinion joined by the two other panel members that attorneys should "avoid making analogies or comparisons to Hitler, Nazis, or the Holocaust unless truly warranted" and that such analogies or comparisons "should almost always be avoided." *State v. Vargas*, 2025 UT App 142, ¶¶ 69, 71 (Tenney, J., concurring); *see also State v. Florreich*, 2024 UT App 9, ¶ 98 n.13, 543 P.3d 795 ("A decision to use Hitler as a reference point is one that is fraught with peril and should be avoided in most any case."), *cert. denied*, 547 P.3d 828 (Utah 2024). Although we resolve Hofeling's claim on prejudice grounds, it's difficult to see how Counsel's reference to the Skokie march would have helped Hofeling's case, particularly where Hofeling's case raises no issues regarding freedom of speech.

which the trial went off without the error." *State v. Samples*, 2022 UT App 125, ¶ 85, 521 P.3d 526 (cleaned up). When assessing prejudice, we are more "inclined to conclude errors are harmless when confronted with overwhelming evidence of the defendant's guilt," and we will more readily reverse "when a conviction is based on comparatively thin evidence." *Hamberlin*, 2025 UT App 131, ¶ 32 (cleaned up).

¶24 Hofeling argues that his defense was prejudiced by Counsel's Nazi invocation because it distracted the jury from what he claims was the weak link of the State's case: whether the evidence was sufficient to prove that he knew or should have known that his conduct would likely cause affront or alarm to Lindsay and Megan. On this point, we disagree with Hofeling.

¶25 Here, we must consider the counterfactual universe in which Counsel did not discuss the Skokie case or arguably compare his client to a Nazi. Stated otherwise, we must ask whether the error erodes our confidence in the outcome. We answer no.

¶26 Hofeling begins his argument on prejudice by quoting Judge Frederic Voros for the following proposition: "Whoever mentioned the Nazis has automatically lost whatever debate was in progress. In other words, by playing the Hitler card you admit that you have no better card." (Quoting Judge J. Frederic Voros, Jr., *Civility in a Time of Incivility*, 30 Utah Bar J. 22, 25 (July/Aug. 2017) (cleaned up)). Hofeling proceeds to assert that "the *way* [C]ounsel chose to bring up Nazis prejudiced" the case because "[t]he takeaway for the jury would [have been] that [C]ounsel, too, viewed his own client . . . as a generally repugnant person." Counsel's strategy, Hofeling argues, entailed "all but acknowledg[ing] guilt."

¶27 But Hofeling overlooks that there was substantial evidence of his guilt. Indeed, he fails to address what are probably the most damning facts for his case: Lindsay and Megan were underaged

girls—indeed, they were roughly half his age—working under his supervision. Although he notes Lindsay's and Megan's ages when he marshals the evidence in favor of the verdict, Hofeling does not state how old *he* was at the time of the offenses. Nor does he explain why the jury would have looked past Lindsay's and Megan's ages when determining whether he knew or should have known whether his conduct would likely cause them affront or alarm. The likely explanation is the simple one: he cannot do so.

¶28 Throughout the briefing, Hofeling dodges these critical facts. For example, although he acknowledges on appeal that the State presented sufficient evidence that he intentionally touched Lindsay and Megan, Hofeling argues that "the evidence strongly support[ed] an inference that [he] inadvertently touched [Lindsay] with a closed fist and then acknowledged the accidental contact" when he said, "I hit your butt." According to Hofeling, his subsequent comment—"I bet you liked it, though"—suggests that "[o]ne of two things is true." He was either "being serious" and Lindsay "had enjoyed the contact" or—and this is the more likely explanation according to Hofeling—he intended the comment to be "a joke" and was not "made aware that his jokes were unappreciated or even offensive" until "after the alleged touching, . . . which does nothing to support the State's case that at the time of the touching he would have known he was likely to cause affront or alarm."

¶29 But Hofeling suggests a false dichotomy. There was a third possibility that, in fact, was the one the jury apparently believed: that Hofeling knew that touching Lindsay and Megan was inappropriate at the time he touched them. As we have explained, Hofeling's comments were clearly sufficient under the plain language of the statute to establish that he knew—or, at the very least, should have known—that conduct was likely to cause affront or alarm to Lindsay and Megan. And we are confident the jury would have convicted Hofeling even had Counsel not invoked the Skokie case during closing argument.

¶30 For these reasons, Hofeling has not demonstrated prejudice in this case. Therefore, his ineffective assistance claim misses the mark.

CONCLUSION

¶31 Hofeling has failed to establish that the district court erred when it denied his motion for a directed verdict because there was ample evidence to establish beyond a reasonable doubt that he was guilty on both counts of sexual battery. And although it is true that allusions or direct references to Hitler, Nazis, and the Holocaust rarely constitute sound trial strategy, we need not decide whether Counsel rendered deficient performance in telling the jury about the Skokie case because Hofeling has not demonstrated prejudice. We therefore affirm his convictions.

———